UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

TIMOTHY NOVESKY,

                Plaintiff,

            v.                            Case No. 08-C-0130

COMPUTER CABLE CONNECTION, INC.,

                Defendant.

DECISION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT (DOC. 32)

Timothy Novesky claims that his former employer, Computer Cable Connection ("CCC"), failed to pay him for time he worked as an Installation Technician. He brings overtime and minimum wage claims, alleging that he was not compensated in violation of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, et seq. (See First Am. Compl. ¶ 3). In response, CCC moved for partial summary judgment on the overtime compensation claim for plaintiff's travel time. Because material factual disputes exist, CCC's motion will be denied.

STATEMENT OF FACTS

CCC is a Nebraska corporation engaged in the business of installing computer cables. (First Am. Compl. ¶ 2.) Novesky was employed at CCC as an Installation Technician, to be paid a weekly salary. (Novesky Depo., 86:16-20). Novesky was hired as an "at-will" employee (Novesky Dep. at 93-94) and began working for CCC in May of 2006 (Novesky Dep. at 13). His position involved installing Philips medical

1

equipment in various hospitals.  (Novesky Dep. at 95-96.)  Novesky was not required to report to CCC's office location before to traveling to work at an installation site. (Novesky Dep. at 97-99.)  Rather, Novesky's job required him to commute directly from home to the installation sites.  While driving to and from an installation site, Novesky would engage in personal activities, including listening to music or audio books, stopping for meals or running errands,  (Novesky Dep. at 103-04) but he also took business call during those times (Novesky Decl. ¶ 10).   Novesky's travel time between installation sites was compensated and is not at issue in this litigation. (Novesky Dep. at 106.)  However, his travel time from home to the first installation site of the day and the time from the last installation site of the day to home are at issue.

Novesky performed some work and work-related activities at his home, such as completing timesheets, expense reports, and status reports.  (Novesky Dep. at 69.)  He seeks compensation for time doing such paperwork that he did not record on his timesheets.  (Novesky Dep. at 115.)  According to Novesky he did not receive minimum wage only for the work days of August 27, 2007 and August 28, 2007.  Further, Novesky claims he is owed overtime for hours worked over forty in a workweek, and he includes travel time in these calculations.  (Novesky Dep. at 89.)  Only the travel time issue is challenged in defendant's motion for partial summary judgement.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving

2

party has the initial burden of demonstrating entitlement to summary judgment. *Id*. at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id*. at 322-24. In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The mere existence of some factual dispute does not defeat a summary judgment motion; there must be a genuine issue of material fact for the case to survive. *Id*. at 247-248. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir.1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

APPLICABLE LAW

The Portal-to-Portal Act, which pertains to work activities outside the scheduled workday, exempts employers from compensating employees under FLSA "for or on account of" time spent "traveling to and from the actual place of performance of the principal activity or activities" of employment and any activities which are "preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a). However, under the continuous workday doctrine, an employee must be compensated for work-related

3

activities performed during the workday. "[A]ny walking time that occurs after the beginning of the first principal activity and before the end of the employee's last principal activity is excluded from the scope of the [Portal Act], and as a result is covered by the FLSA." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005).

Some courts have defined a principal activity as "any work of consequence." *Dunlop v. City Electric, Inc.*, 527 F.2d 394 (5th Cir. 1976). There is no formula or set criteria for determining whether an activity is principal, and a court must examine the particular facts and circumstances in each case. *Skidmore v. Swift & Co.*, 323 U.S. 134 (1994). Any activity that is "integral and indispensable" to a principal activity is itself a principal activity. *Alvarez*, 546 U.S. at 37.

However, the de minimis doctrine permits employers to disregard, for purposes of the FLSA, otherwise compensable work "[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946). "It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Id.* Circuit courts have considered several factors in determining whether otherwise compensable time should be considered de minimis: (1) the practical administrative difficulty of recording additional time, (2) the size of the claim in the aggregate, (3) whether the claimants performed the work on a regular basis, and (4) the amount of daily time spent on the additional work. *See Reich v. N.Y.C. Transit Auth.*, 45 F.3d 646, 652 (2d Cir. 1995); *Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984).

DISCUSSION

4

The parties dispute whether Novesky should be compensated for his travel time based on three arguments:  first, that under the continuous-workday doctrine his alleged work at home before commuting was "principal" rather than de minimis; second, that the commuting time was "principal"; and third, that CCC had a custom or practice of compensating the travel time in question.

Material factual disputes exist as to the nature and extent of the work performed at Novesky's home before commuting to the hospital worksites and after he returned from the worksites to his own home.  CCC contends that Novesky grossly exaggerates the extent and significance of his claimed morning and evening work activities.  (Def.'s Reply at 1.)  This assertion implicitly acknowledges a factual dispute.  CCC also contends that Novesky cannot change his prior testimony to create a material issue of fact.  However, Novesky does not contradict his prior testimony; he merely supplements it with additional testimony in the form of a declaration.  (Novesky Decl. ¶¶ 3, 6.)

While it is true that nothing in the record supports the assertion that Novesky responded to emails from home after reviewing them, other assertions made by Novesky are supported by facts in the record.  Novesky's declaration states that he started work by using his laptop to check his assignment schedule, reviewing emails regarding his work schedule, printing and reviewing installation plans, and planning driving routes to the assigned work sites.  (Novesky Decl. ¶ 3.)  Additionally, his mornings involved loading his truck with the appropriate tools for the work sites, which varied depending on the nature of the work.  These tools included laptop computers, a cloning tool, a hardhat, a four-foot ladder, a software library, network switches, patch cables, a toolbox, a drill, soldering equipment, GCX mounts, mounting hardware, telemetry antenna hardware, a recorder, a

5

rack, a frequency converter, speciality cables, and a flat panel display. (*Id*. ¶ 5.) Combined, these morning activities typically took fifteen minutes. (*Id*. ¶ 4.)

Novesky's evening activities included unloading tools from his vehicle, checking email, and making journal entries regarding the status of the jobs performed and how the jobs were installed. Novesky states that he also prepared an "as built" document for the client, Philips. (Novesky Decl. ¶ 7.) Moreover, he submits that beginning in 2007 he prepared a daily status report for his supervisor, Chris Kielian. Typically, these evening tasks took from ten to twenty minutes. (*Id*.) CCC disputes Novesky's assertion that he prepared "as built" documents for Philips. According to CCC these documents were created by Philips, and Novesky's only duty was to note any design modifications.

These potentially conflicting assertions illustrate facts in dispute that materially affect the question of whether Novesky's activities were principal in nature or were de minimis. A jury would best be able to determine the necessity, extent and frequency of plaintiff's pre - and post - commute work activities. A juror may assess how many days of the week Novesky loaded his truck; how often he used the heavier tools and equipment items; how often he filled out his paperwork at the end of the day; and what preparing the "as built" document involved. These questions are relevant to applying the four factor test in determining whether an activity was de minimis. After answering these questions, a reasonable trier of fact could find that Novesky's work activities from home were not de minimis. Additionally, a fact finder could determine that these activities were "integral and indispensable" to a principal activity. Therefore, after viewing the evidence in a light most favorable to the non-moving party, summary judgment is not appropriate.

6

Novesky has cited no case law to support his contention that his travel time was itself a principal activity. He maintains that the travel time in question was a principal activity because it conferred a substantial benefit on CCC. However, this argument pertains to whether the activity was compensable, not whether it was principal.

Commuting is presumptively non-compensable under the FLSA. *Rutti v. Lojack Corp.*, 596 F.3d 1046 (9th Cir.2010). While employees need not be compensated "for or on account of" commuting to and from work, they must be compensated for any work performed during a commute that is "integral and indispensable" to a principal activity of their employment. *See Singh v. City of New York,* 524 F.3d 361, 367 (2d. Cir. 2008); *see also* 29 C.F.R. § 785.41 ("Any work which an employee is required to perform while traveling must, of course, be counted as hours worked.").

No reasonable jury would find that work done by Novesky, such as making and receiving business calls while traveling to and from the worksites, was anything but de minimis. Furthermore, Novesky testified that periodically, he used his commuting time for his own purposes such as listening to music or books on tape. In addition, Novesky testified that he would run errands during the commute. (Novesky Dep. at 103-04.) These facts taken as a whole undermine any argument that Novesky's travel time was a principal activity, and, therefore, do not support his claim that the travel time in question is compensable.

However, the Portal-to-Portal Act, which generally precludes compensation for travel time, does contain specific exceptions that allow for it. Under one exception, travel time is compensable if there is a contract or "custom or practice in effect" at the

7

place of employment. 29 U.S.C. § 254(b). Novesky submits that a contract in the form of an oral agreement to compensate him for his travel time was in place when he discussed his salary with Chris Kielian. Additionally, he alleges that a custom or practice was in effect at CCC that compensated employees for their travel time from home to the work sites and back. However, CCC denies this assertion, claiming that any instance of compensation for travel time was according to an individual contract rather than a company custom or practice of compensating for travel time.

Whether or not there was a custom or a practice at CCC for compensating travel time is a jury question. Further, the record indicates that there is a factual dispute respecting what Novesky was told regarding the compensability of his travel time. Novesky claims, based on a conversation with Chris Kielian about his salary, that compensation for travel time was agreed to as a term of his employment. On the other hand, CCC claims that it never expressed to Novesky that his salary was intended to compensate him for his travel time. CCC also accuses Novesky of contradicting prior deposition testimony. However, Novesly testified as to what he thought the components of his compensation were.

Further, Novesky has offered evidence to support a jury finding that there was a custom or practice of compensating employees for travel time. He points to the compensation Lou Nikolich, a fellow employee, received for his travel time. Whether one instance or many instances are required to establish a custom or practice is a jury question. A reasonable jury could find that a practice of compensating for travel time at CCC existed, for whatever reason. Therefore, CCC is not entitled to judgment as a matter of law on this issue.

CONCLUSION

For the reasons stated above,

IT IS ORDERED that the motion for partial summary judgment (Doc. 32) is denied.

IT IS FURTHER ORDERED that a telephonic scheduling conference is set for October 12, 2011 at 11:00 AM to set further proceedings in this case.

Dated at Milwaukee, Wisconsin, this 27th day of September, 2011.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE

9